**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Jose Enriquez |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court | Northern District of Illinois |
| Case number: 18-32093 | |

FILED

**U.S. Bankruptcy Court**
**Northern District of Illinois**

11/20/2018

**Jeffrey P. Allsteadt, Clerk**

EXHIBIT
A
tabbies®

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy ca[...] make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Riverbrook Estates Association

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Riverbrook Estates Association | |
| Name | Name |
| Keay & Costello, P.C.<br>128 S. County Farm Road<br>Wheaton, IL 60187 | |
| Contact phone ____630-690-6446____ | Contact phone _____ |
| Contact email __ben@keaycostello.com__ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|
| 7. How much is the claim? | $ _____3411.97_____   **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**   Association lien<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:   $ ____155500.00____<br><br>Amount of the claim that is secured:   $ ____3411.97____<br><br>Amount of the claim that is unsecured:   $ ____0.00____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:   $ _____<br><br>Annual Interest Rate (when case was filed)   ____%<br><br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                              Proof of Claim                              page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.<br>18 U.S.C. §§ 152, 157 and 3571. | Check the appropriate box:<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date   11/20/2018

MM / DD / YYYY

/s/ Benjamin J. Rooney

Signature

Print the name of the person who is completing and signing this claim:

| Name | Benjamin J. Rooney |
|---|---|
| | First name   Middle name   Last name |
| Title | |
| Company | Keay & Costello, P.C. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 128 S. County Farm Road |
| | Number   Street |
| | Wheaton, IL 60187 |
| | City   State   ZIP Code |
| Contact phone | 630-690-6446   Email   ben@keaycostello.com |

## Account History Report
## Riverbrook Estates Association

| | | |
|---|---|---|
| **Jose J. Enriquez** | | 00154-8228 |

| | |
|---|---|
| Community Address: | 1304 Idabright Drive |
| | Plainfield, IL 60586 |
| Mailing Address: | 1304 Idabright Drive |
| | Plainfield, IL 60586 |

| | | |
|---|---|---|
| Date Settled: | | |
| Unit Type: | 01 - Unit Type 01 | |
| Location: | 505 | |
| Last payment date: | **Thu Jun 28, 2018** | |
| Last payment amount: | 60.00 | |
| Current balance: | 2,506.97 | |

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 02/10/2017 | Opening Balance | 708.08 | | 708.08 | | | |
| 03/10/2017 | Late Fee | 10.00 | | 718.08 | | Late Fee | Late Fee: 03/10/2017 |
| 04/01/2017 | Quarterly Assessment | 69.00 | | 787.08 | | Quarterly Charges | Recurring Charges: 04/01/2017 |
| 04/10/2017 | Late Fee | 10.00 | | 797.08 | | Late Fee | Late Fee: 04/10/2017 |
| 04/17/2017 | Legal Fee | 564.68 | | 1,361.76 | | 69308 | Legal Fee |
| 05/04/2017 | Legal Fee | 327.75 | | 1,689.51 | | 70617 | Legal Fee |
| 05/10/2017 | Late Fee | 10.00 | | 1,699.51 | | Late Fee | Late Fee: 05/10/2017 |
| 06/10/2017 | Late Fee | 10.00 | | 1,709.51 | | Late Fee | Late Fee: 06/10/2017 |
| 06/19/2017 | Check | | -699.51 | 1,010.00 | | 20659264203 | KEAY & COSTELLO PC_PIF 6-2017 |
| 06/19/2017 | Check | | -1,000.00 | 10.00 | | 20659264202 | KEAY & COSTELLO PC |
| 06/22/2017 | Late Fee | | -10.00 | 0.00 | | Credit | Reverse 06/10/2017 Late Fee |
| 07/01/2017 | Quarterly Assessment | 69.00 | | 69.00 | | Quarterly Charges | Recurring Charges: 07/01/2017 |
| 07/10/2017 | Late Fee | 10.00 | | 79.00 | | Late Fee | Late Fee: 07/10/2017 |
| 08/10/2017 | Late Fee | 10.00 | | 89.00 | | Late Fee | Late Fee: 08/10/2017 |
| 08/17/2017 | Demand Letter Charge | 35.00 | | 124.00 | | Demand Letter | Processing Fee |
| 09/10/2017 | Late Fee | 10.00 | | 134.00 | | Late Fee | Late Fee: 09/10/2017 |
| 09/29/2017 | Check | | -89.00 | 45.00 | | R107148582068 | ENRIQUEZ |
| 10/01/2017 | Quarterly Assessment | 69.00 | | 114.00 | | Quarterly Charges | Recurring Charges: 10/01/2017 |
| 10/10/2017 | Late Fee | 10.00 | | 124.00 | | Late Fee | Late Fee: 10/10/2017 |
| 11/10/2017 | Late Fee | 10.00 | | 134.00 | | Late Fee | Late Fee: 11/10/2017 |
| 12/10/2017 | Late Fee | 10.00 | | 144.00 | | Late Fee | Late Fee: 12/10/2017 |
| 12/12/2017 | Compliance Fine | 25.00 | | 169.00 | | Siding | 11/1/2017 00:00:00 |
| 12/12/2017 | Compliance Fine | 25.00 | | 194.00 | | Roof Replacement | 11/1/2017 00:00:00 |
| 01/01/2018 | Quarterly Assessment | 69.00 | | 263.00 | | Quarterly Charges | Recurring Charges: 01/01/2018 |
| 01/10/2018 | Late Fee | 10.00 | | 273.00 | | Late Fee | Late Fee: 01/10/2018 |
| 02/10/2018 | Late Fee | 10.00 | | 283.00 | | Late Fee | Late Fee: 02/10/2018 |
| 02/15/2018 | Demand Letter Charge | 35.00 | | 318.00 | | Demand Letter | Processing Fee |
| 03/10/2018 | Late Fee | 10.00 | | 328.00 | | Late Fee | Late Fee: 03/10/2018 |
| 04/01/2018 | Quarterly Assessment | 69.00 | | 397.00 | | Quarterly Charges | Recurring Charges: 04/01/2018 |
| 04/10/2018 | Late Fee | 10.00 | | 407.00 | | Late Fee | Late Fee: 04/10/2018 |
| 05/10/2018 | Late Fee | 10.00 | | 417.00 | | Late Fee | Late Fee: 05/10/2018 |
| 05/22/2018 | Delinq Proc Fee - Assn | 175.00 | | 592.00 | | Attorney | Processing Fee |
| 06/01/2018 | Compliance Fine | 50.00 | | 642.00 | | tarp on roof | tarp on roof |
| 06/10/2018 | Late Fee | 10.00 | | 652.00 | | Late Fee | Late Fee: 06/10/2018 |
| 06/27/2018 | Legal Fee | 231.39 | | 883.39 | | 87457 | Legal Fee |
| 06/28/2018 | Check | | -60.00 | 823.39 | | 17-734683441 | Enriquez |
| 07/01/2018 | Quarterly Assessment | 69.00 | | 892.39 | | Quarterly Charges | Recurring Charges: 07/01/2018 |
| 07/10/2018 | Late Fee | 10.00 | | 902.39 | | Late Fee | Late Fee: 07/10/2018 |
| 07/20/2018 | Legal Fee | 50.00 | | 952.39 | | 88859 | Legal Fee - FC |
| 08/08/2018 | Legal Fee | 1,067.83 | | 2,020.22 | | 90277 | Legal Fee |
| 08/10/2018 | Late Fee | 10.00 | | 2,030.22 | | Late Fee | Late Fee: 08/10/2018 |
| 09/10/2018 | Late Fee | 10.00 | | 2,040.22 | | Late Fee | Late Fee: 09/10/2018 |
| 10/01/2018 | Quarterly Assessment | 69.00 | | 2,109.22 | | Quarterly Charges | Recurring Charges: 10/01/2018 |
| 10/03/2018 | Legal Fee | 377.75 | | 2,486.97 | | 91694 | Legal Fee |
| 10/10/2018 | Late Fee | 10.00 | | 2,496.97 | | Late Fee | Late Fee: 10/10/2018 |
| 11/10/2018 | Late Fee | 10.00 | | 2,506.97 | | Late Fee | Late Fee: 11/10/2018 |

*10-24-18   Legal fee   605.00   3,111.97   Collection* (handwritten)

*11-20-18   Legal fee   300.00   3,411.97   Bankruptcy* (handwritten)

R97-107168

Mary Ann Stukel          12/03/97
Will County Recorder      15:44
                    PC2   Fee:    45.00
R 97107168          Page   1 of  34

This instrument prepared by
and after recording should
be returned to:
Gary S. Mueller, Esq.
McKeown, Fitzgerald, Zollner,
Buck, Hutchison, & Ruttle
2455 Glenwood Avenue
Joliet, Illinois  60435

## AMENDED AND RESTATED DECLARATION OF COVENANTS AND RESTRICTIONS TO AMEND AND RESTATE RIVERBROOK ESTATES SECTION II DECLARATIONS RECORDED DECEMBER 2, 1996 AS DOCUMENT NO. R96107118

**DECLARATION** made by Dean Development Corporation, an Illinois corporation, as an agent for the developers and the owners (hereinafter referred to as the "Developer") and Standard Bank and Trust Company as Trustee under Trust Agreement dated 4/4/96 and known as Trust No. 15205, under Trust Agreement dated 4/24/96 and known as Trust No. 15229, and under Trust Agreement dated 4/24/96 and known as Trust No. 15230, its delegatees, or assignees (hereinafter referred to as "Title Holder") of the real estate located in the City of Joliet, commonly known as RIVERBROOK ESTATES, and legally described herein, which is hereby incorporated herein and made a part hereof.

### WITNESSETH

WHEREAS, Standard Bank and Trust Company as Trustee under Trust Agreement dated 4/4/96 and known as Trust No. 15205, is the legal title holder of the real estate described in Exhibit A.  Standard Bank and Trust Company as Trustee under Trust Agreement dated 4/24/96 and known as Trust No. 15229, is the legal title holder of the real estate described in Exhibit B.  Standard Bank and Trust Company as Trustee under Trust Agreement dated 4/24/96 and known as Trust No. 15230, is the legal title holder of the real estate described in Exhibit C.  Dean Development Corporation is the Developer of the real estate described in Exhibit D.  These Exhibits are attached hereto and incorporated herein; and

WHEREAS, the above described real estate is now improved with single family residential units commonly known as RIVERBROOK ESTATES; and

WHEREAS, it is the desire and intention of the Title Holder to enable the Property (as hereinafter defined) which includes, but is not limited to, said real estate

12/01/97.gsm.tnc                    1 /34

R97=107168

shall be borne by the Owners at the time such loss, damage, cost or expense is incurred in the same proportion as assessments are borne by the Owners as provided herein. To the extent possible, the Board's and Association's liability hereunder and the Owner's indemnification obligation shall be insured by means of appropriate contractual endorsements to the comprehensive general liability insurance policies held from time to time by the Association.

(30)   Developer shall be entitled at all times to conduct sales of Lots from the Property and shall have the right, for itself and its agents, employees, guests and invitees, to utilize roads, streets, and all other portions of the Property, excluding sold Lots, for such purposes until all Lots are sold. Developer may at all times utilize signage, lighting and establish sales offices and model homes as required to conduct its sales and marketing of the Property.

## D. ASSESSMENTS

(31)   The assessments levied by the Association shall be used for the purpose of maintaining the Property of the Association and such other expenses of the Association as incurred by the Board in carrying out the purposes hereof.

(32)   The Board shall determine what amounts are necessary or desirable to meet the purposes of the Association including, without limitation, the establishment and maintenance of a contingency in the replacement reserve. The annual assessments provided for herein shall commence for each Lot on the first day of the month following delivery of a Lot Deed to an Owner other than the Developer. The estimated cash requirement shall be assessed equally among all the Owners excluding the Declarant.

(33)   Each year on or before November 1, the Board will estimate the total amount of maintenance expenses necessary to pay the cost of wages, materials, taxes, insurance, services, supplies and any other necessary or desirable items which will be required during the ensuing calendar year (January 1 - December 31) for services authorized by the Board, together with a reasonable amount necessary to fund the Contingency and Replacement Reserve, and shall, on or before December 1, notify each Owner in writing of the amount of such estimate ("Estimated Cash Requirement"). Such Estimated Cash Requirement shall be prepared on a line-item basis. The Estimated Cash Requirement shall be assessed equally among all of the Owners excluding the Declarant. On or before January 1 of the ensuing fiscal year, each Owner shall be obligated to pay to the Board, or as it may direct, the annual assessment made pursuant to this Section. On or before the date of the annual meeting of each calendar year, the Board shall furnish to all Owners an itemized accounting of the maintenance expenses for the preceding fiscal year actually incurred and paid, together with a tabulation of the amounts collected from the owners

12/01/97.gsm.tnc                                16

R97-107168

pursuant to assessments made during such year and showing the net amount over or short of the actual expenditures, plus reserves. The Board shall upon demand at any time furnish a certificate in writing signed by an officer or agent of the Association, setting forth whether the assessments on a specified Lot have been paid. Such certificates shall be conclusive evidence of payment or nonpayment of any assessment thereon.

(34)   (a)   The Board shall build up and maintain a reserve for the replacement of capital improvements, other authorized capital expenditures, and for unforeseen expenditures (the "Contingency and Replacement Reserve"). Capital improvements and expenditures which may become necessary during the year shall be charged first against the Contingency and Replacement Reserve. Any expenditure from the Contingency and Replacement Reserve having a cost in excess of FIVE HUNDRED and NO/100ths ($500.00) DOLLARS shall require the prior approval of the Members holding two-thirds (2/3) of the votes of the Association.

        (b)   If the Contingency and Replacement Reserve proves inadequate for any reason, including nonpayment of any Owner's assessment, the Board may, at any time, levy a special assessment which shall be assessed equally among the Owners, excluding the Declarant. The Board shall serve notice of any such special assessment on all such Owners by a statement in writing giving the amount and reasons therefor, and such special assessment shall become effective and fully payable ten (10) days after the delivery or mailing of any such notice of assessment.

(35)   When the first Board elected by the Members hereunder takes office, in 1997, it shall determine the Estimated Cash Requirement for the period commencing on the first day of the month and ending on December 31 of the calendar year. The initial Estimated Cash Requirement shall be assessed equally among the Owners. The Developers' assessment to maintain Developer's improved and recorded lots shall not exceed twenty-five (25%) percent of assessment on other lots and shall be a total of two hundred ($200.00) dollars on all unimproved unrecorded lots.

(36)   The failure or delay of the Board to prepare or serve the Estimated Cash Requirement on any Owner shall not constitute a waiver or release in any manner of any Owner's obligation to pay his share of such Estimated Cash Requirement as herein provided, as and when the Estimated Cash Requirement shall be determined, and, in the absence of the preparation of the Estimated Cash Requirement, the Owner shall continue to pay his share of such Estimated Cash Requirement at the then existing annual rate established for the previous calendar year, subject to adjustment at such time as the Estimated Cash Requirement has been prepared and the Owners have been notified thereof.

(37)   The Board shall keep full and correct books of account in chronological order of the receipts and expenditures specifying and itemizing the maintenance and repair

12/01/97.gsm.tnc                    17

R97-107168

expenses and any other expenses so incurred.  Such records and the vouchers authorizing the payments described therein shall be available for inspection by any Owner or any representative of an Owner duly authorized in writing, or any holder of a Mortgage at such reasonable time or times during normal business hours when requested by an Owner or by the holder of a Mortgage.  Upon five (5) days' prior written notice to the Board, any Owner shall be furnished a statement of his account, which statement shall set forth the amount of any unpaid assessments or other charges due and owing from such Owner.

(38)  All funds collected hereunder shall be held and expended for the purposes designated herein, and are hereby held in trust for the benefit, use and account of all Owners.  All funds not otherwise employed shall be deposited from time to time to the credit of the Association in such banks, trust companies or other depositories as the Board may select.

(39)  Any assessments or other charges which are not paid when due shall be delinquent.  If the assessment or charge is not paid within thirty (30) days after the due date, the assessment shall bear interest from and after the due date at the rate of eighteen percent (18%) per annum, and the Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the Owner's Lot, and interest, costs and reasonable attorneys' fees incurred in any such action shall be added to the amount of any such overdue assessment.  To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments, and interest, costs and fees as above provided, shall be and become a lien or charge against the Lot of any such Owner when payable and may be foreclosed by an action brought in the name of the Board as in the case for foreclosure of mortgage liens against real estate.  The Directors of the Board and their successors in office, acting in behalf of the other Owners, shall have the power to bid in the interest so foreclosed at foreclosure sale, and to acquire and hold, lease, mortgage and convey any interest so acquired.  To the fullest extent permitted by law, any court shall be authorized to restrain the defaulting Owner from reacquiring his interest at such foreclosure sale.

(40)  In addition to the rights and remedies set forth herein, if any Owner shall default in the payment, when same shall be due, of the aforesaid charges or assessments and said default shall continue for thirty (30) days after written notice to said Owner by the Board, of the amount of unpaid charges or assessments and a demand for payment thereof, the Board shall have the right to declare said default a forcible detainer of the Dwelling and shall have the right, on behalf of the other Owners, to enter and take possession of the Dwelling from any defaulting Owner, to put out said Owner, or any occupant or tenant claiming by, through or under said Owner, using such reasonable force as the Board shall deem necessary under the circumstances and, in addition, to exercise any other rights or remedies provided in the Forcible Entry and Detainer Act, Chapter 110, Illinois Revised Statutes.

12/01/97.gsm.tnc                    18

R97-107168

(41)   The lien of assessments provided for herein shall be subordinate to the lien of any Mortgage now or hereafter placed on the Lots. In the event of the issuance of a deed pursuant to the foreclosure of such prior Mortgage or in lieu of such foreclosure, the Grantee of such deed shall take title free and clear of any lien for assessment authorized by this Declaration so long as any such lien shall have arisen prior to the date of recording of any such deed.

(42)   Amenities. The Developers have allocated and dedicated all space required for amenities including swimming pool, club house, tennis court, playground and walking path. Upon completion and sale of 400 homes or upon homeowners actual control of REA, the home owners will decide with 75% majority vote the scope of the amenities to be built and levy the necessary assessment for construction.

## E. MISCELLANEOUS

(43) Trustee Exculpation. This Declaration is executed by Standard Bank and Trust Company, Trustee as aforesaid, in the exercise of power and authority conferred upon and vested in it as such Trustee (and said Trustee hereby warrants that it possesses full power and authority to execute this instrument). It is expressly understood and agreed by every person, firm or corporation hereafter claiming any interest under this Declaration that said Trustee as aforesaid, and not personally, has joined in the execution of this Declaration for the sole purpose of subjecting the title holding interest and the trust estate under said Trust to the terms of this Declaration; that any and all obligations, duties, covenants and agreements of every nature herein set forth by said Trustee as aforesaid, to be kept or performed, are intended to be kept, performed and discharged by the beneficiaries under said Trust or their successor, and not by said Trustee personally, and further, that no duty shall rest upon the Standard Bank and Trust Company, either personally or as such Trustee, to sequester trust assets, rentals, avails or proceeds of any kind, or otherwise to see to the fulfillment or discharge of any obligation, express or implied, arising under the terms of this Declaration, except where said Trustee is acting pursuant to direction as provided by the terms of said Trust, and after the Trustee has first been supplied with funds required for the purpose. In the event of conflict between the terms of this paragraph and of the remainder of the Declaration on any question of apparent liability or obligation resting upon said Trustee, the exculpatory provisions hereof shall be controlling.

IN WITNESS WHEREOF, Standard Bank and Trust Company as Trustee under Trust Agreement dated 4/4/96 and known as Trust No. 15205, under Trust Agreement dated 4/24/96 and known as Trust No. 15229, and under Trust Agreement dated 4/24/96 and known as Trust No. 15230, as Trustee as aforesaid and not individually, has caused its corporate seal to be hereto affixed, and has caused its name to be signed to these presents by its ___AVP & TO_____ and attested by its ___Trust Officer_____ this __3rd__ day of ___December_____, 1997.

12/01/97.gsm.tnc                               19